# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

FRANCISCO CENTENO

**MAGISTRATE JUDGE BROWN**

CRIMINAL COMPLAINT

CASE NUMBER: 08CR 659

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about August 18, 2008, at Bridgeview, in Cook County, in the Northern District of Illinois, Eastern Division, defendant FRANCISCO CENTENO

> attempted to knowingly and intentionally possess with intent to distribute a controlled substance, namely, in excess of 500 grams of mixtures containing cocaine, a Schedule II Narcotic Drug Controlled Substance,

in violation of Title 21, United States Code, Section 846.

I further state that I am a Special Agent, DEA, and that this complaint is based on the following facts:

> See attached Affidavit.

Continued on the attached sheet and made a part hereof: _X_ Yes __ No

Philip McCormick, Special Agent, DEA
Signature of Complainant

Sworn to before me and subscribed in my presence,

August 19, 2008                              at          Chicago, Illinois
Date                                                    City and State

Geraldine Soat Brown, U.S. Magistrate Judge
Name & Title of Judicial Officer                         Signature of Judicial Officer

FILED
AUG 19 2008 TC
8-19-08
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

STATE OF ILLINOIS　　　)
　　　　　　　　　　　　)
COUNTY OF COOK　　　　)

## AFFIDAVIT

I, Philip McCormick, Special Agent of the Drug Enforcement Administration, Chicago, Illinois, being duly sworn, deposes and states as follows:

1.　　I am currently employed as a Special Agent with the Department of Justice, Drug Enforcement Administration (DEA) and have been so employed since February 2004. I am currently assigned to the Chicago Field Division (CFD), Enforcement Group 31. Prior to employment with the DEA, I was employed with the Indiana State Police for approximately five years. As part of my regular duties as a Special Agent, I investigate criminal violations of the federal narcotics laws, including Title 21, United States Code, Sections 841 and 846. In connection with narcotics investigations, I have participated in monitoring pen registers and Title III wiretaps, debriefed informants, and participated in controlled buys in an undercover capacity. I have also been involved in various types of investigations, and in the debriefing of defendants, witnesses, informants, and others who have knowledge of narcotics trafficking, and of the laundering and concealing of proceeds of drug trafficking defendants. I have received specialized training in the enforcement of laws concerning the activities of narcotics traffickers. Because this affidavit is made for the limited purpose of establishing probable cause to show that Francisco CENTENO attempted to possess with intent to distribute a controlled substance, namely, approximately two (2) kilograms of cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 846, I have not recited each and every fact known to me about the investigation.

2.  The facts recited below are based on my personal observations, my review of audio and video recordings and DEA reports, and my discussions with other law enforcement officers and agents, including the undercover agent (Agent Mendez) referred to below.

3.  On or about July 17, 2008, Bridgeview Confidential Source #07-03 (CS) asked another individual (Individual A) whether he (Individual A) knew anyone who wanted "to work" ( that is, to purchase narcotics). Individual A stated that he did, and the CS told Individual A to have that person call him.

4.  Later, on or about July 17, 2008, a man identifying himself as "Francisco" called the CS, and, using coded language, asked to purchase quantities of narcotics. At approximately 1:53 PM, the CS placed a consensually recorded phone call to FRANCISCO LNU at 708-699-2267. The CS told FRANCISCO LNU to meet him at the Dunkin' Donuts at Archer and Harlem Avenue, Summit, IL to discuss the narcotics sale.

5.  SA Phil McCormick equipped SA Luis Mendez (acting in an undercover capacity and hereinafter referred to as UC) with a device that both recorded conversations and transmitted the conversations to surveillance agents. Agents initiated surveillance in the area of the Dunkin' Donuts. TFO Michael J. Benaitis recorded a video of the meeting.

6.  At approximately 4:30 PM, SA McCormick observed the UC and CS enter the Dunkin' Donuts. At approximately 4:31 PM, TFO Benaitis observed a silver Monte Carlo, bearing Illinois registration "G34 8317", enter the Dunkin' Donuts parking lot and the driver enter the store. The registration returned to Francisco CENTENO, Male Hispanic, DOB 10/21/80, 5529 W 23rd Place, Cicero, IL 60804, Illinois driver's license number C53524080300, on a 2000 Chevy Monte Carlo, vin: 2G1WX12K3Y9349965.

7. At approximately 4:31 PM, TFO Benaitis observed the driver of the silver Monte Carlo meeting with the UC and CI. At this time, SA Lyons, who was listening to the UC conversations with "Francisco," relayed to surveillance that the target (Francisco) and UC were discussing the details of the proposed deals, specifically the cost per kilogram and quality of "white" (a code word for cocaine).

8. At approximately 4:44 PM, TFO Benaitis observed the UC and CI exit the Dunkin' Donuts, enter a vehicle and depart the area. Surveillance was maintained upon the vehicle.

9. At approximately 5:15 PM, SA Michael McClarence observed the vehicle parked upon the 3000 West Block of Pope John Paul Drive, Chicago, IL, on the south side of the street in front of an apartment building. Surveillance was terminated at this time.

10. DEA intelligence provided a photo of Francisco CENTENO, DOB 10/21/80. SA Mendez positively identified the person in the photo as the same person that he and the CS met with in the Dunkin' Donuts.

11. On July 22, 2008, TFO Michael Benaitis and SA Phil McCormick debriefed the CS. The CS advised that he/she received a phone call on July 21, 2008 at approximately 9:00 PM from CENTENO. During the conversation CENTENO told the CS that he had the money ready to purchase the cocaine. The CS told CENTENO that it was too late in the day and that he/she would call him (CENTENO) tomorrow.

12. On July 22, 2008, at approximately 11:00 AM, the CS called TFO Benaitis and informed him that CENTENO had called the prior evening and called two more times on July 22, 2008. Each time CENTENO stated that he had the money and was ready to purchase the cocaine.

13. On July 22, 2008, at approximately 1:14 PM, the CS placed a consensually recorded phone call to CENTENO. During the conversation the CS informed him that his/her (CS') source of supply was out of town. CENTENO was very disappointed, but advised that he understood. CENTENO then informed the CS that he wanted to purchase "fifteen" (that is, 15 kilograms of cocaine). CENTENO insisted that the price be set at $23,000 per kilogram. The CS advised that he/she would have to check with his/her guy.

14. On July 22, 2008, at approximately 1:41 PM, the CS placed a consensually recorded call to CENTENO. During the conversation the CS informed him that his/her guy would be in next week with a new load and that he/she would put fifteen aside for Francisco. The CS advised CENTENO that his/her guy agreed to the price of $23,000 per kilogram.

15. On July 29, 2003, at approximately 10:00 AM, TFO Michael J. Benaitis and SA Luis Mendez debriefed the CS. Agents had provided the CS with a tape recorder and cassette tape in order to consensually record conversations between the CS and potential targets. The CS provided TFO Benaitis with the tape that he/she had been utilizing. The contents of the recordings related to CENTENO are summarized below:

A call between the CS and Francisco CENTENO at 708-699-2267, recorded on July 20, 2008: CENTENO called the CS and (in coded language) discussed the price for kilograms of cocaine. The CS and CENTENO discussed prices in the range of $23,000 to $24,000 per kilogram. CENTENO advised that those prices were good for him. CENTENO stated that other people were charging him too much.

A call between the CS and Francisco CENTENO at 708-699-2267, recorded on July 21, 2008 at approximately 9:30 PM: The CS received the call from CENTENO.

4

During the conversation CENTENO told the CS that there is nothing going on anywhere and asked if the CS could do anything for him. The CS told him that is was too late at night and he/she would call him tomorrow.

A call between the CS and Francisco CENTENO at 708-699-2267, recorded on July 22, 2008: The CS received a call from CENTENO. During the conversation CENTENO advised that he was ready to buy five. The CS told CENTENO that he will call his friend in the morning about the five. The "five" is reference to five kilograms of cocaine previously negotiated.

A call between the CS and Francisco CENTENO at 708-699-2267, recorded on July 28, 2008: The CS placed a call to CENTENO. During the conversation the CS advised that he/she spoke to his friend and they will be ready on Thursday. CENTENO stated he will have to contact his people to see if they will be ready.

SA MENDEZ listened to the calls and positively identified the voice of Francisco CENTENO as the same voice of the person that he spoke with during the meeting on July 17, 2008 and the same voice that he has had telephone conversations with.

16.   On July 29, 2008, at approximately 10:58 AM, the CS placed a consensually recorded phone call to Francisco CENTENO, at 708-699-2267. When CENTENO answered the phone the CS told him that the guy (making reference to the UC) wanted to talk to him. SA Mendez (acting in an undercover capacity) got on the phone with CENTENO. During the conversation CENTENO told the UC that he no longer had the money for the five kilograms previously negotiated. CENTENO stated that he could get the money together for two kilograms, but it would take him a couple days. CENTENO asked

the UC if the UC would let him buy one kilogram but only make half payment. CENTENO would then return a few hours later with the payment and get another kilogram of cocaine. CENTENO wanted to continue with one kilogram at a time for half payment several times a day. The UC advised that he did not work that way. The UC told CENTENO that he would call him back later that day.

17. On or about August 15, 2008, the CS received calls from CENTENO negotiating the purchase of 2 kilograms of cocaine. As instructed, the CS called CENTENO and told him that the deal would have to wait until Monday, August 18, 2008.

18. On August 18, 2008, at approximately 12:19 p.m., the UC called CENTENO at telephone number (708) 699-2267. CENTENO answered the telephone and stated to the UC that he and his friend were on their way, and that they were making sure that they had all the "papers" (money), so that the narcotics transaction would take place. The UC stated to CENTENO that he would not be available to meet with him on 79th Street and Harlem Avenue until 2:30 p.m. CENTENO asked the UC if he could meet him sooner because he was already there, referring to the aforementioned meeting place. The UC responded that he could not meet him sooner because he was in the downtown area. The UC also stated that he also needed to stop at the garage to make sure the "merchandise" (cocaine) was there. CENTENO agreed, and stated that the individual he was with had the money and did not have a problem regarding the way the UC worked. The UC asked CENTENO if it was for "two fingers" (two kilograms of cocaine). CENTENO agreed. The UC stated s/he would meet him at 2:30 p.m. Shortly thereafter, the conversation was terminated. This telephone conversation was partially recorded and only CENTENO'S voice can be heard.

6

19. On the same date, at approximately 2:36 p.m., the CS received a telephone call from (708) 699-2267, but the CS did not answer. Minutes later, the UC called the same number and CENTENO answered. The UC stated that he was on his way and that he was in the vicinity of 60th and Harlem Avenue. CENTENO stated that he was in the vicinity of Roosevelt and Cicero, but would be there soon. The UC responded that CENTENO was still far. CENTENO responded that he was nearby and would be there in three minutes. The UC agreed. This telephone call was recorded.

20. At approximately 2:40 p.m., DEA and local law enforcement established surveillance in the vicinity of K-Mart located at 79th and Harlem Avenue in Bridgeview, Illinois.

21. At approximately 2:47 p.m., the UC (equipped with a recording and transmitting device) and the CS arrived at the K-Mart parking lot in a blue Chevrolet Impala.

22. At approximately 2:58 p.m., the UC called CENTENO at telephone number (708) 699-2267. CENTENO answered, and the UC stated that he was there now, referring to 79th and Harlem Avenue. CENTENO stated that he was at Archer and Harlem Avenue.

23. At approximately 3:15 p.m., CENTENO called the CS. The UC answered, and CENTENO stated that he was a few blocks away. The UC asked CENTENO what vehicle he was in. CENTENO responded that it was a Monte Carlo. The UC stated that he was in a blue vehicle.

24. At approximately 3:27 p.m., CENTENO called the CS. The UC answered, and CENTENO stated he was approaching the bridge, referring to an overpass on 79th west of Harlem. The UC stated that he was parked in front of the K-Mart parking lot next to the pharmacy in a blue vehicle. CENTENO asked if the UC was parked across the

street, referring to Walgreens or at the "K", referring to K-Mart. The UC responded that he was at "K".

25.   At approximately 3:28 p.m., surveillance units observed CENTENO driving east on 79th and subsequently turn south into the K-Mart parking lot. CENTENO then parked in a parking space directly in front of the UC and CS. The UC and CS exited their vehicle and began to approach CENTENO. CENTENO, the sole occupant in the vehicle, exited the driver side and approached the trunk area, which he opened. CENTENO informed the UC that the money was there and pointed towards a white plastic shopping bag. CENTENO leaned inside the trunk and opened the plastic bag. The UC observed in the bag U.S. currency wrapped inside a separate white packaging. The UC asked CENTENO if it was all there. CENTENO unwrapped the white packaging and the U.S. currency became visible. The UC observed the currency in several bundles in two stacks. The UC asked if they were all 20s, referring to 20 dollar bill denominations. CENTENO stated that there were hundreds, referring to 100 dollar bill denominations. The UC then leaned inside the trunk to touch the currency. CENTENO closed the trunk and walked towards the driver side of his vehicle and asked the UC if it was at 24, referring to $24,000.00 per kilogram of cocaine. The UC said yes. The UC explained to CENTENO to follow him and that the garage would be just before 95th Avenue. As the UC and CS were returning to their vehicle, the UC observed a black Eldorado Cadillac stopped behind CENTENO'S vehicle.

26.   At approximately 3:30 p.m., the UC and CS entered their vehicle and drove west through the K-mart parking lot and observed that CENTENO, driving the Monte Carlo, were following them. The UC and CS turned south on Oketo, when CENTENO was

subsequently stopped by the Bridgeview Police Department, taken into custody and transported to the Bridgeview Police Department for further questioning.

27.   After the Monte Carlo CENTENO was driving was stopped, a dog trained to detect the presence of narcotics alerted to the trunk of the Monte Carlo. After CENTENO provided verbal consent, the trunk was searched and police recovered a white plastic bag containing a large quantity of U.S. currency in twenties and hundreds, which the narcotics dog also alerted to.

FURTHER THE AFFIANT SAYETH NOT.

PHILIP MCCORMICK
Special Agent, DEA

Sworn to and subscribed before me
This 19th day of August, 2008

MAGISTRATE GERALDINE SOAT BROWN
United States Magistrate Judge

9